IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEVIN E. WILSON,  :
  :
      Plaintiff,  :
  :
v.  : Civ. No. 13-1390-LPS
  :
CITY OF WILMINGTON and  :
DEPARTMENT OF LICENSES AND  :
INSPECTIONS,  :
  :
      Defendants.  :

---

Kevin E. Wilson, Suffolk, Virginia, Pro Se Plaintiff.

Tara M. DiRocco, Esquire, City Solicitor's Office, Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

July 29, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Kevin E. Wilson ("Wilson" or "Plaintiff") filed this action on August 5, 2013, against Defendants City of Wilmington, Delaware ("the City") and its Department of Licenses and Inspections ("DL&I") (together "Defendants") pursuant to Title VII of the Civil Rights act of 1964, as amended, alleging retaliation and employment discrimination by reason of race. (D.I. 2) Wilson appears *pro se*. Presently before the Court is Defendants' motion for summary judgment and Wilson's opposition thereto. (D.I. 98, 103, 104, 105) For the reasons that follow, the Court will grant the motion.

## II. BACKGROUND

Wilson, an African-American male, was employed by the City as a housing code enforcement supervisor in the DL&I from May 6, 2002 until he resigned on January 3, 2014. (D.I. 100 at A5, 7) Wilson's duties included supervising housing code enforcement officers, one of whom was Jessica Ramos-Velazquez ("Ramos-Velazquez"). (*Id.* at A9, 123, 166) During the relevant time-frame, Jeffrey J. Starkey ("Starkey"), an African-American male, was the commissioner of DL&I. (*Id.* at A75, 91) A75; 92) Leo L. Lynch ("Lynch"), of Jamaican heritage, has been the deputy commissioner of the DL&I since 2005. (*Id.* at A-174, 184) While Wilson reported to both Lynch and Starkey, Lynch was Wilson's direct supervisor. (*Id.* at A123, 178-79)

On March 19, 2012, Wilson filed a charge of discrimination, asserting that Starkey had discriminated against him on the basis of race. (*Id.* at A36-39) The March 19, 2012 charge was dismissed and a no-cause determination and right to sue notice was issued. (*Id.*) Wilson did not file a lawsuit as a result of the charge.

On October 11, 2012, Ramos-Velazquez sent an email to Starkey, Lynch, and Wilson expressing concerns about the housing division and Wilson, her supervisor. (*Id.* at A148-50) Ramos-Velazquez testified that she not discuss the email with Starkey or Lynch prior to sending it, and she did not send it at their direction. (*Id.* at A169) Upon receipt of the email, Starkey instructed Ramos-Velazquez not to discuss its contents with anyone, including Wilson, pending an investigation of her complaints. (*Id.* at A168-69, 184)

On October 15, 2012, Wilson met with Starkey and Lynch to discuss Ramos-Velazquez's complaints about him and the issues she had raised regarding the housing division. (*Id.* at A14-15; 93; 179) There was no discussion of race at the meeting. (*Id.* at A16) The meeting took place in Starkey's office from 10:30 a.m. until 11:00 a.m. (*Id.* at A43) During the meeting, Starkey assigned Lynch to investigate the issues raised by Ramos-Velazquez. (*Id.* at A87, 93, 185). Following adjournment of the meeting, Lynch returned to his office to begin his investigation. (*Id.* at A93) Lynch could not find Ramos-Velazquez's October 11 email, went to Starkey's office, and asked him to forward the email to him. (*Id.*) Starkey forwarded the email to the housing division which consists of 17 people, including Ramos-Velazquez, Lynch, and Wilson. (*Id.* at A40-42; 93) Starkey testified that he accidently forwarded the email to a group he had set up for the people to whom he often sent emails. (*Id.* at 193) The email was forwarded to the housing division staff at 11:19 a.m., approximately 19 minutes after Starkey's meeting with Lynch and Wilson had ended. (*Id.* at A40-42, 93) Lynch advised Starkey he had forwarded the email to the group. (*Id.* at 193) Upon learning that he had forwarded the Ramos-Velazquez's email to the housing division staff, Starkey recalled his email at 12:13 p.m. the same day. (*Id.* at A44-46, 93, 167). Starkey verbally apologized to Wilson and followed up with an email apology later that afternoon at 3:13 p.m. (*Id.* at A17-18, 47, 93) Early the next morning, Starkey sent Wilson a second email wherein he sincerely apologized for the

mistake. (*Id.* at A48) Wilson testified that he believes that Starkey forwarded the email on purpose. (*Id.* at A18)

On October 16, 2012, Wilson filed an internal grievance with the City's director of human resources regarding the email forwarded by Starkey. (*Id.* at A49-50). Wilson testified that he filed the grievance because he "felt [he] was wronged, and [his] name was defamed as a result of that email, then it was spread across the internet to several people that shouldn't have known about it." (*Id.* at A19) Following investigation of the grievance, the human resources department wrote to Starkey that, while the allegations lodged against him were unfounded, it revealed some unresolved issues that needed to be addressed with regard to promoting and maintaining a harmonious work environment; the HR department further made several recommendations to be implemented immediately. (*Id.* at A52) On November 13, 2012, and prior to a decision on the grievance, Wilson filed a charge of discrimination regarding Starkey's action in forwarding the email.[1] (*Id.* at A46-147) Wilson's grievance was denied on December 5, 2012, "[b]ased upon Mr. Starkey's explanation, the e-mail was erroneously sent, it was not an attempt to humiliate or embarrass [Wilson] and therefore, the matter is not substantiated." (*Id.* at A51) Wilson appealed the denial of the grievance to the City's personnel appeal board, which upheld the denial of Wilson's grievance. (*Id.* at A56-59)

On December 7, 2012, Lynch met with Wilson to go over the email that Ramos-Velazquez had sent but, according to Lynch, Wilson advised Lynch he was unable to discuss the email due to legal counsel and, instead, wished to discuss a pattern of behavior by Ramos-Velazquez subsequent to the email incident. (*Id.* at A21-22; 54-55; 185-86) Lynch testified that he stopped his investigation of Ramos-Velazquez's email because Wilson had counsel. (*Id.* at A186) Wilson was

---

[1]Wilson received a notice of suit rights dated May 21, 2013, and filed this action on August 5, 2013. (D.I. 1 Ex.)

3

not disciplined or reprimanded as a result of the allegations made by Ramos-Velazquez and, during his tenure with the City, Wilson was never demoted, directly encouraged to resign, given a reduction in pay, transferred positions, or had his benefits reduced. (*Id.* at A29, 32, 93-94, 185)

Wilson eventually sought new employment and resigned from the City. He began full-time employment with the City of Newport News, Virginia on December 2, 2013, while still a full-time employee of the City – he was concurrently employed by both municipalities for a short time. (*Id.* at A12, 26, 185) Wilson submitted an email resignation to DL&I inspectors on January 3, 2014, stating "[w]ords cannot express the rich moments that I have spent being your supervisor and developing such great relationships with you all, . . . I shall never forget any of you . . . [t]he time has come to transition into another phase of my life now, only God knows what the future holds and I do trust him with my future." (*Id.* at A60) Wilson did not directly inform Lynch or Starkey of his resignation. (*Id.* at A24, 185) Wilson explained that he took early retirement from the City and he currently receives a pension. (*Id.* at A25, 28)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be - or, alternatively, is - genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine

4

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. With respect to summary judgment in a discrimination case, the court's role is "to determine whether, upon

5

reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Defendants move for summary judgment on the grounds that Wilson's retaliation and race discrimination claims fail as a matter of law.

## IV. DISCUSSION

### A. Title VII

Wilson alleges retaliation and race discrimination in violation of 42 U.S.C. § 2000e, *et seq*. Absent direct evidence of discrimination based upon race or direct evidence of retaliation, Wilson may satisfy his burden on summary judgment by presenting indirect evidence of discrimination and retaliation sufficient to satisfy the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Shahin v. Delaware*, 531 F. App'x 197, 199 (3d Cir. July 22, 2013) (applying *McDonnell Douglas* burden-shifting to discrimination and retaliation claims under Title VII). Under this framework, Wilson bears the initial burden of establishing a prima facie case of a Title VII violation. *See McDonnell Douglas Corp.*, 411 U.S. at 802. If he establishes a prima facie case, the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *See id.* The burden then returns to Wilson to show that the legitimate reason offered by Defendants is pretextual. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

### A. Retaliation

To establish a prima facie claim of unlawful retaliation, Wilson is required to show that: (1) he engaged in a protected activity; (2) Defendants took an adverse action against him; and

6

(3) there was a causal connection between the protected activity and the adverse action taken. *See Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Title VII defines a protected activity as an instance in which an employee has opposed a discriminatory employment practice based upon an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e-2(a)(1); 2000e-3(a).

An "adverse employment action" is an action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Services*, 390 F.3d 760, 764 (3d Cir. 2004) (noting that definition of adverse action stems from language of Title VII itself, which states that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, . . ." 42 U.S.C. § 2000e-2(a)(1)). The plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). A court examines the challenged conduct "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *see also Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195-96 (3d Cir. 2015). "[P]etty slights, minor annoyances, and simple lack of good manners" generally will not suffice. *Id.* at 68.

With regard to the third prong, a court considers "a broad array of evidence in determining whether a sufficient causal link exists [for a plaintiff] to survive a motion for summary judgment." *Daniels*, 776 F.3d at 196-97 (citations omitted). While the causation analysis is highly fact-based and depends on the particular context in which the events occurred, a plaintiff can generally "adduce causation of retaliation through evidence that illustrates 'close temporal proximity' and

7

circumstances indicating a 'pattern of antagonism' following the protected conduct." *Allen v. Nutrisystem, Inc.*, 2013 WL 1776440, at *5 (E.D. Pa. April 25, 2013) (quoting *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302, 306 (3d Cir. 2007)). However, unless it is "unduly suggestive," temporal proximity is generally insufficient by itself to support a finding of causation. *Lichtenstein v. University of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012). In the absence of such a close temporal proximity, a court considers the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action. *See Daniels*, 776 F.3d at 196-97.

Defendants argue that Wilson's retaliation claim fails as a matter of law because he has failed to establish a prima facie case of retaliation. Defendants acknowledge that Wilson meets the first prong of a retaliation claim, given Wilson's charge of discrimination that he filed on March 19, 2012. Defendants argue, however, that Wilson has not met the second and third prongs required to establish a prima facie claim of retaliation.

With regard to the second prong, Defendants point to the evidence of record that no adverse employment action was taken against Wilson by the City. Wilson responds that on February 24, 2012 (a time prior to the March 19, 2012 charge of discrimination), he was subjected to a hostile, harassing, and bullying work environment.[2] (D.I. 103 at A152-55). Wilson points to other acts that he considers adverse employment actions, including Starkey's forwarding of Ramos-Velazquez's October 11, 2012 email to the entire staff; inaccuracies in the Ramos-Velazquez email that defamed him; and his failure to receive annual performance evaluations, in violation of City policy. The

---

[2]The Court will address Wilson's claims of a hostile work environment, due process violations, defamation, and conspiracy in IV.C.

8

evidence of record indicates that Wilson received performance evaluations for the periods of May 6, 2003 to May 6, 2004, May 6, 2004 to May 6, 2005, May 6, 2006 to May 6, 2007, and May 6, 2009 to May 6, 2010.³ (*See* D.I. 100 at A65; D.I. 103 at A86, A97, A101) Wilson also appears to argue that an adverse employment action occurred because his October 16, 2012 grievance was not heard in a timely manner, in violation of City policy. Finally, he posits that "there could have been a conspiracy" that Ramos-Velazquez be given his job.

The Court finds the record does not support a finding of a materially adverse employment action. The record reflects that Wilson's employment was not terminated; nor was he disciplined, demoted, or transferred to another department. He did not receive a reduction in pay or benefits. Instead, the acts of which Wilson complains are of a type of annoying act that an employee could expect in a workplace environment. The record further reflects that, despite what Wilson considers adverse employment actions, those actions did not dissuade him from filing a second charge of discrimination in November 2012 – following the forwarding of Ramos-Velazquez's email in October 2012. *See Sykes v. Pennsylvania State Police*, 2007 WL 141064, at *6-7 (W.D. Pa. Jan. 17, 2007) (alleged adverse employment actions, whether characterized as major or minor, did not deter plaintiff's pursuit of new and expanded allegations of discrimination, either internally or administratively, and, thus, belied her argument that reasonable person confronted with the purported adverse employment actions would have been dissuaded from voicing additional allegations of discrimination).

With regard to the third prong, even assuming that Wilson suffered adverse employment actions, he has failed to adduce sufficient evidence for a reasonable jury to find a causal relationship

---

³During his deposition, Starkey testified that he did not have Wilson's personnel file before him to determine whether other evaluations were performed that were not shown in the documents discussed during his deposition. (D.I. 100 at A79)

9

between his EEOC filing and the adverse employment actions. The temporal proximity between Wilson's March 19, 2012 EEOC filing and the adverse employment actions of which he complains – including the October 11, 2012 email, the forwarding of that email on October 15, 2012, and the length of time it took to resolve Wilson's October 16, 2012 grievance – is not "unduly suggestive." Approximately seven months elapsed between the March 19 filing and the events complained of by Wilson, a length of time that is typically not considered as particularly suggestive of a causal connection. *See, e.g., Lichtenstein*, 691 F.3d at 307 (finding seven days unduly suggestive); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *see also Farrell v. Planter's Lifesavers Co.*, 206 F.3d 271, 278-79 (3d Cir. 2000) (declining to decide whether three to four week period between two events would be sufficient – by itself – to support inference of causation).

Hence, Wilson must demonstrate other circumstances (such as a pattern of antagonism) in conjunction with the timing in order to establish the third element of his prima facie case. The only episodes he identifies that occurred after his EEOC filing are the email complaint made by his subordinate that he asserts contains inaccuracies, the dissemination of that email, and his displeasure with the length of time it took to resolve his October 16, 2012 grievance. These incidents do not constitute the types of "continuous and extreme antagonistic treatment" necessary to support an inference of causation. *See Allen*, 2013 WL 1776440, at *6 (citing *Marra*, 497 F.3d at 306).

Wilson has failed to establish the necessary elements of his prima facie case and, therefore, he cannot succeed on his retaliation claim. Accordingly, the Court will grant Defendants' motion for summary judgment on the retaliation issue.

### B. Race Discrimination

Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). A plaintiff may prove race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp*. Because there is no direct evidence of discrimination, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Wilson must establish a prima facie case of race discrimination by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *See Jones*, 198 F.3d at 410. The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves*, 530 U.S. at 142. If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the

11

employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (quoting *Fuentes*, 32 F.3d at 764 (internal citations and other citations omitted)).

Defendants argue that Wilson's discrimination claim fails as a matter of law because he has failed to establish a prima facie case of race discrimination, and, in particular, that Wilson, an African-American, is only able to meet the first prong of a race discrimination claim. Wilson alleges in the complaint that discrimination occurred when he was informed by his superiors they intended to investigate the email complaint of Ramos-Velazquez and the same day the email complaint was forwarded to all of Wilson's subordinates, at a time when no investigation had been conducted, in violation of City policies.

As discussed above, there is no evidence that Wilson suffered an adverse employment action. While Wilson may have been embarrassed and humiliated when Starkey forwarded Ramos-Velazquez's email, Wilson's feelings are not materially adverse employment actions. *See e.g., Castro v. New York City Bd. of Educ. Personnel*, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alternatives of employment conditions.").

Even assuming Wilson satisfied the second element of his prima facie race discrimination case, the evidence of record does not demonstrate that similarly situated workers outside of the protected class were treated more favorably. To make a comparison of Wilson's treatment to that of employees outside his protected class for purposes of a Title VII claim, Wilson must show that he and the employees are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (unpublished) (citations omitted). Whether a factor is relevant

for purposes of a similarly situated analysis must be determined by the context of each case. *Houston*, 355 F. App'x at 654.

Here, Wilson has presented no evidence identifying similarly situated employees, outside his protected class, who were treated differently than he was in similar circumstances; nor did he produce evidence that any adverse employment action was suffered "under circumstances that give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Wilson's general arguments that he was subjected to harassment, without more, do not establish circumstances that give rise to an inference of racial discrimination. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Wilson has failed to establish the elements of his prima facie case and, therefore, the Court will grant Defendants' motion for summary judgment on the race discrimination claim.

### C. Claims Raised in Plaintiff's Opposition to Defendants' Motion for Summary Judgment

In his opposition, Wilson references due process violations, a conspiracy to give his job to Ramos-Velazquez, harassment, bullying, defamation, and a hostile work environment. Defendants move to dismiss these claims as they are raised for the first time in Wilson's opposition and, with regard to the hostile work environment claim, Wilson did not exhaust his administrative remedies, as is required prior to filing a Title VII claim in federal court. Wilson responds that the hostile work environment claim is included in his November 13, 2012 charge of discrimination and, as to all claims, he has established his claims by reference to depositions and other parts of the record.

13

1. **Exhaustion of Administrative Remedies**

With regard to the hostile work environment claim, summary judgment is proper because Wilson failed to exhaust his administrative remedies and raised it for the first time in his opposition to Defendants' motion for summary judgment. It is well-settled that the filing of a charge with the EEOC and notice of suit rights are prerequisites to a civil action under Title VII. *See McDonnell Douglas Corp.*, 411 U.S. at 798. The parameters of a federal court action are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges."). When a claim has not specifically been presented in an administrative charge, the test for whether that claim may be presented to the District Court is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

After a plaintiff files a charge of discrimination against an employer and subsequently receives a notice of suit right, a plaintiff's "ensuing suit [in district court] is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. Jan. 20, 2010) (citing *Antol*, 82 F.3d at 1296). Accordingly, a plaintiff cannot "greatly expand an investigation simply by alleging new and different facts when" later bringing claims in the District Court. *Hicks*, 572 F.2d at 967.

In his operative charge of discrimination (i.e., the one that led to the instant lawsuit), Wilson alleged that he was subjected to discriminatory terms and conditions of employment due to his race, and retaliation, when: (1) on October 11, 2012, his subordinate sent an email about Wilson to Wilson and his supervisors; (2) Wilson met with his supervisors on October 15, 2012 and was informed that the complaint would be investigated; (3) on the same day, the complaining email was forwarded to all of Wilson's subordinates without an investigation having been conducted; and (4) that conduct violated the City's policies. (D.I. 103 at A73) Wilson first raised the issue of a hostile work environment in his opposition to Defendants' motion for summary judgment, wherein he argues that he was subjected to a hostile, harassing, and bullying work environment by Starkey. (D.I. 103 at ¶ 1)

The issue is whether a hostile work environment claim is within the fair scope of Wilson original EEOC filing. To succeed in a racial harassment claim based upon a hostile work environment, Wilson must show that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 n.6 (3d Cir. Apr. 30, 2014).

Even liberally interpreting Wilson's charge of discrimination, a hostile work environment claim is not within the scope of the charge. The Third Circuit Court of Appeals held in *Anjelino v. New York Times Co.*, 200 F.3d 73, 94-95 (3d Cir. 1999), that a hostile work environment claim was within the scope of an initial EEOC charge because it alleged the plaintiff was subjected to an "abusive atmosphere," a phrase which is interchangeable with "hostile work environment." Here,

by contrast, there is no language in Wilson' charge of discrimination that gives rise to a hostile work environment claim. The charge of discrimination identifies only allegations of race discrimination relating to Wilson's employment with the City in general and, specifically, references the October 2012 email making complaints against him that was forwarded to other City workers. Wilson provided no facts that suggest a hostile work environment, and he did not check the box indicating his charge was a "continuing action." *See, e.g., Barzanty*, 361 F. App'x at 414-415 (discharged employee failed to exhaust her administrative remedies with respect to Title VII hostile work environment claim, where employee's charge of discrimination identified only allegation of gender discrimination relating to her discharge, and it did not set forth any facts suggesting abusive workplace or hostile work environment).

Accordingly, the Court will grant Defendants' motion for summary judgment on the issue of failure to exhaust administrative remedies with respect to the hostile work environment claim.[4]

---

[4]Based on the evidence of record, even had Wilson exhausted his administrative remedies, no reasonable jury could find for him on the issue of a hostile work environment. Wilson complained that he did not receive annual evaluations, as required by City policy, although the record indicates that evaluations were performed, albeit not annually. He filed a grievance against Starkey on February 24, 2012 complaining of unfair treatment and workplace harassment. The evidence of record indicates that the City investigated the complaint and could not find "any evidence, whatsoever, of unfair treatment or workplace hostility of any kind, directed toward [] Wilson by [] Stanley or anyone else." (D.I. 100 at A154-56) Wilson filed a charge of discrimination on the same claim (but this is not the charge of discrimination that led to the instant lawsuit) and, similarly, the evidence did not indicate that the actions complained of were motivated by Wilson's class. (*Id.* at A38) Nor was there evidence to support race as a determining factor in the harassment alleged. (*Id.*) In addition, as discussed above with regard to the October email that was forwarded by Starkey, Wilson failed to meet his burden of a prima facie case of discrimination or retaliation. Title VII does not represent "'a general civility code for the American workplace'" but, instead, provides relief only to employees who suffer severe or pervasive harassment because of a reason prohibited by Title VII. *See Jensen*, 435 F.3d at 449 (quoting *Oncale*, 523 U.S. at 80-81).

### 2. Newly Raised Claims

Wilson references due process violations, a conspiracy to give his job to Ramos-Velazquez, harassment, bullying, defamation, and a hostile work environment in his opposition to Defendants' motion for summary judgment. He contends that the claims are not raised for the first time. Defendants move to dismiss the claims as not previously raised by Wilson.

Wilson's position is not supported by the record. The foregoing claims are not alleged in the complaint (*see* D.I. 2) and cannot be raised for the first time in an opposition to a motion for summary judgment. *See e.g, Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). Accordingly, to the extent Wilson attempts to raise due process violations, conspiracy, harassment, bullying, defamation, and a hostile work environment, the Court will grant Defendants' motion and dismiss the claims.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment. (D.I. 98) An appropriate Order follows.